UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JASMINE A. EASLEY, | Case No. 2:19-cv-02214-APG-BNW |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| AMERIPRISE FINANCIAL, INC., et al., | |
| Defendants. | |

Presently before the Court is Plaintiff Jasmine A. Easley's ("Easley's") motion to amend ("Easley's Motion"). ECF No. 23. For the reasons discussed below, the Court will grant Plaintiff's motion in part and recommend that it be denied in part.

**I.    Background**

This case centers around Easley's allegation that Ameriprise Financial Services, Inc. ("Ameriprise") wrongfully terminated her employment for reasons related to her disability. ECF No. 29 at 2.

Easley timely filed her motion to amend. ECF No. 23; *see* ECF No. 15 at 2. Easley seeks leave to add a claim for intentional interference with prospective economic advantage and will drop her claim for failure to accommodate brought under the ADA. ECF No. 23.

Easley alleges that Ameriprise intentionally reported false information to the Financial Industry Regulation Authority ("FINRA") on a required form, stating that the company fired Easley for violating a final behavioral warning. ECF No. 23 at 4. Easley alleges Ameriprise's this was pretextual because Easley properly notified Ameriprise that she was leaving work to visit a doctor, approved through her intermittent FMLA leave. *Id*. Easley alleges that this disclosure prevented her from securing future employment. *Id*. Before termination, Easley alleges her manager confronted her about a conversation she had with another employee and mocked her for

her disabilities. *Id*. at 3. Easley also alleges that her manager tried to make her watch a video about adult-aged triplets that suffered from some of the same mental health issues Easley suffers from, one of which committed suicide in the video. *Id*.

Ameriprise filed a partial opposition to Plaintiff's motion to amend ("Ameriprise's Opposition"), arguing that Easley's new claim would be futile. ECF No. 26. And subsequently, Easley filed a reply ("Easley's Reply"). ECF No. 29.

## II.     DISCUSSION

Generally, a party may amend its pleading once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "The court considers five factors [under Rule 15] in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, the futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). "The standard for granting leave to amend is generous." *Id.*

### A.  Easley's Motion

Here, Easley argues the Court should grant her leave to amend her complaint to add a claim for intentional interference with prospective economic advantage. ECF No. 23. Easley's motion addresses the factors courts consider when assessing the propriety of granting leave to amend. ECF No. 23 at 5-7.

First, Easley argues that amendment would not cause undue delay: she timely filed her motion to amend and only recently learned of Ameriprise's inaccurate disclosure during negotiations with a potential employer. *Id*. at 5.

Second, Easley argues that she is not acting in bad faith or with a dilatory motive. *Id*. at 6. Easley is conforming the pleading to the facts as recently discovered; she is not seeking to add parties that were uninvolved or disinterested, and the additional cause of action is a foreseeable consequence of Ameriprise's improper reporting of the basis of her termination. *Id*.

1    Third, Easley argues that she has not repeatedly failed to cure deficiencies by previous amendments, because this is Easley's first request for leave to amend. *Id*.

Fourth, Easley argues that her amendment would not cause any undue prejudice to Ameriprise. *Id* at 6-7. Easley is not seeking to add additional parties. *Id.* Ameriprise will have sufficient time to complete discovery by the cut-off date. *Id*. And if Easley is permitted to add the claim, Ameriprise will continue the same investigation of Easley's claims. *Id*.

Fifth, the amendment is not futile. *Id*. at 7. The single additional claim Easley seeks to bring is relevant, necessary, and would allow full compensation for her loss. *Id*.

And sixth, Easley's proposed amended complaint will bring clarity to her claims by breaking up several causes of action brought under the ADA. *Id*.

**B.  Ameriprise's Opposition**

Ameriprise argues that the Court should deny Easley's request to add a claim for intentional interference with prospective economic advantage but does not oppose Easley amending her claims brought under the ADA. ECF No. 26 at 1, 5.

Ameriprise argues that Easley's claim for intentional interference with prospective economic advantage would be futile because it is based "merely on a recitation of elements and speculation of fact." ECF No. 26 at 5-6. More specifically, its overarching argument is that it cannot be held liable for making a required disclosure to FINRA even if Easley disagrees with the termination or contends that it was discriminatory. *Id*. at 3.

Ameriprise argues that when a party opposes a motion as futile, the standard of review is whether the claim meets the threshold under Rule 12(b)(6) for failure to state a claim. ECF No. 26 at 5; *See Farina v. Compuware Corp.*, 256 F. Supp.2d 1033, 1061 (D. Ariz. 2003) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Accordingly, to state a claim for intentional interference with prospective economic advantage, Ameriprise argues that Easley must allege facts showing: (1) a prospective contractual relationship between plaintiff and a third party; (2) defendant's knowledge of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by defendant; and (5)

actual harm to plaintiff as a result of defendant's conduct. ECF No. 26 at 6; *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88 (1987).

Ameriprise first argues that Easley does not meet the second element of the claim because she does not allege facts to show that Ameriprise knew of Easley's employment opportunities. ECF No. 26 at 4.

Ameriprise next argues that Easley does not meet the third element of the claim because she "makes the speculative and conclusory assertion that [Ameriprise] intended to cause [Easley] harm by 'falsely' reporting the nature of her termination to FINRA." *Id*. at 4.

Ameriprise argues Easley has not met the fourth element of the claim because Ameriprise had absolute privilege and was "required by law" to disclose the reason for terminating Easley to FINRA. ECF No. 26 at 5-7 (*citing Cucinotta v. Deloitte & Touche, L.L.P.*, 129 Nev. 322, 327 (2013) (holding that an accounting firm had absolute privileged to disclose defamatory information made pursuant to federal securities law)).

**C.  Easley's Reply**

Easley argues that Ameriprise's arguments fail. ECF No. 29 at 2. Easley argues that she meets the first element of intentional interference with prospective economic advantage by attaching exhibits of email correspondence with potential employers. ECF Nos. 29-2, 29-3. Easley argues that she meets the second element because Ameriprise knew or should have known Easley would seek future employment upon termination. ECF No. 29 at 4. Easley does not directly address the third element but argues that Ameriprise intentionally reported incorrect information to FINRA, and that disclosure precluded her from obtaining future employment. *Id*. at 2.

Easley next addresses the fourth element, arguing that Ameriprise does not have a legal obligation to wrongfully terminate her and report false information to FINRA. *Id*. Easley argues that disclosure of non-securities related misconduct to FINRA is not absolutely privileged. *Id*. at 6-8. Easley argues that Nevada has not explicitly addressed whether financial firms have absolute privilege or qualified privilege concerning statements made on Form U-5. *Id*. at 6. Easley argues that *Cucinotta*, the case cited by Ameriprise to assert absolute privilege, is distinguishable

because it involved an accounting firm disclosing what it believed to be illegal securities misconduct. ECF No. 29 at 7; 129 Nev. at 323-24. And here, Ameriprise, an investment firm, disclosed conduct unrelated to securities misconduct, fraud, or dishonesty. ECF No. 29 at 7. Reporting this information to FINRA, Easley argues, does not serve the public interest. *Id*. Easley contends that the Court should adopt the position that disclosure of non-securities related misconduct to FINRA is not absolutely privileged. *Id*. at 7-8; *Tilkey v. Allstate Ins. Co.*, 261 Cal. Rptr. 3d 435, 453 (Ct. App. 2020), *reh'g denied* (May 7, 2020), *order vacated* (May 27, 2020), *reh'g granted, opinion not citeable* (May 27, 2020).

### D. Analysis

The Court will grant Easley's motion in part and recommend that it be denied in part. The Court will grant Easley's motion to the extent she seeks to amend her ADA claims, as Ameriprise does not oppose this. ECF No. 26 at 1. The Court will recommend that her motion be denied to the extent she attempts to add a claim for intentional interference with prospective economic advantage.

Defendant has not argued, and the Court does not find that bad faith, undue delay, or prejudice to the opposing party exist here. *See* ECF No. 23 at 6-7. Also, Easley has not previously amended her Complaint. *See id*. at 6. However, the Court finds that Easley's amendment to add a claim for intentional interference with prospective economic advantage would be futile, as discussed below.

"A proposed amended complaint is futile if it would be immediately 'subject to dismissal.'" *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011). Accordingly, the Court will apply the standard articulated in *Twombly* and *Iqbal*. *Nordyke*, 644 F.3d at 788 n.12 ("the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)"); *see Fulton v. Advantage Sales & Mktg., LLC*, No. 3:11-CV-01050-MO, 2012 WL 5182805, at *3 (D. Or. Oct. 18, 2012) (applying the *Twombly* and *Iqbal* standard to motion to amend opposed as futile).

Easley's pleadings must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

To state a claim for intentional interference with prospective economic advantage, Easley must show (1) a prospective contractual relationship between plaintiff and a third party; (2) Defendant's knowledge of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by defendant; and (5) actual harm to plaintiff as a result of defendant's conduct. *Leisure Sports Inc.*, 103 Nev. at 88.

The Court finds that Easley cannot show that Ameriprise's statement was not privileged and thus cannot state a claim for interference with prospective economic advantage. *See id.* The parties dispute whether Ameriprise had an absolute privilege to disclose the reason she was terminated. ECF Nos. 26 at 6-7, 29 at 5-8. Ameriprise contends that it had an absolute privilege to disclose this information, citing *Cucinotta v. Deloitte & Touche, L.L.P.*, 129 Nev. 322, 327 (2013) (holding that an accounting firm had absolute privileged to disclose defamatory information made pursuant to federal securities law). Plaintiff disagrees, citing *Tilkey v. Allstate Ins. Co.*, 261 Cal. Rptr. 3d 435, 453 (Ct. App. 2020), *reh'g denied* (May 7, 2020), *order vacated* (May 27, 2020), *reh'g granted, opinion not citeable* (May 27, 2020) (privilege for fraud-and-securities-related information required by FINRA did not extend to reasons for termination on Form U5 that were unrelated to securities issues).

Here, the Court applies Nevada law to determine whether Ameriprise's statements were privileged. In *Cucinotta,* the Nevada Supreme Court held that "those who are required by law to publish defamatory statements should be absolutely privileged in making such statements." 129

Nev. at 326. Still, it required that "(1) the communications be made pursuant to a lawful process, and (2) the communications be made to a qualified person." *Id*. Here, there is no dispute that the communications were made under FINRA and to a qualified person. ECF Nos. 26 at 2-3, 29 at 5. Accordingly, the Court finds that Ameriprise's statements were absolutely privileged. *See Cucinotta*, 129 Nev. at 326.

The Court considered whether *Cucinotta* is distinguishable from the facts of this case but finds that it is not distinguishable in a way that changes the Court's conclusion. In *Cucinotta*, it was not clear that the defendant reported information it knew to be false. 129 Nev. at 323-24. Here, by contrast, Easley alleges that Defendant reported information it knew to be false. ECF No. 29 at 2. Even assuming Easley's allegations are true, as the Court must, the Court finds that this is not a relevant fact upon which to distinguish this case from *Cucinotta.* This is so because, in *Cucinotta*, the Nevada Supreme Court explicitly considered that the absolute privilege it created could be abused but created it despite this risk. 129 Nev. at 325. The court reasoned that "[c]ertain communications, although defamatory, should not serve as a basis for liability in a defamation action and are entitled to an absolute privilege because 'the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements.'" *Id.* Accordingly, the Nevada Supreme Court implicitly acknowledged that the absolute privilege it created would occasionally protect false statements (but still, it did not condition the privilege on the defendant knowing the statement to be true or at least not false). *Id*. As such, the Court believes that if the Nevada Supreme Court were presented with the facts of this case, it would find Ameriprise's statements to be absolutely privileged. *Id*.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Easley's motion to amend (ECF No. 23) is GRANTED in PART. It is granted to the extent that Easley seeks to amend her claims under the ADA.

IT IS RECOMMENDED that Easley's motion be DENIED to the extent that she seeks to add a claim for intentional interference with prospective economic advantage.

### IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 9, 2020

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE